UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| KASEY N. BENTLEY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; KRISTOFER W. BENTLEY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; PHYLLIS A. MINOR, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; AND CHRISTIAN BUTLER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; <br><br> Plaintiffs, <br><br> vs. <br><br> HICKAM COMMUNITIES LLC,  DOE DEFENDANTS 1-20, <br><br> Defendants. | CIV. NO. 24-00007 LEK-KJM |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS
OR STAY PLAINTIFFS' CLAIMS, FILED NOVEMBER 17, 2023**

Before the Court is Defendant Hickam Communities,

LLC's ("Hickam Communities") Motion to Compel Arbitration and to

Dismiss or Stay Plaintiffs' Claims, Filed November 17, 2023

("Motion"), filed on January 24, 2024. [Dkt. no. 7.] Plaintiffs

Kasey N. Bentley, Kristofer W. Bentley, Phyllis A. Minor, and

Christian Butler, individually and on behalf of all others

similarly situated ("Plaintiffs") filed their memorandum in

opposition on February 9, 2024, and Hickam Communities filed its

reply on June 7, 2024. [Dkt. nos. 11, 19.] The Court finds this

matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). Hickam Communities' Motion is hereby granted insofar as Plaintiffs Kasey N. Bentley and Kristofer W. Bentley ("the Bentleys") and Plaintiff Phyllis A. Minor ("Minor") are ordered to arbitrate their individual claims, and all claims by the Bentleys and Minor are stayed. The Motion is denied as to Hickam Communities' request for dismissal of the Bentleys' and Minor's claims. In addition, the Motion is denied as to all claims by Plaintiff Christian Butler ("Butler").

## BACKGROUND

Plaintiffs filed a complaint in the State of Hawai`i Circuit Court of the First Circuit ("state court") on November 17, 2023, and the case was removed to this district court on January 4, 2024. [Notice of Removal, filed 1/4/24 (dkt. no. 1), Exh. A (Complaint).] Hickam Communities argued this Court had original jurisdiction pursuant to Title 28 United States Code Section 1332(a) and the Class Action Fairness Act of 2005 ("CAFA"), Title 28 United States Code Section 1332(d). [Notice of Removal at pg. 3, § III.] In addition, Hickam Communities invoked federal officer removal jurisdiction. See id.

I.   <u>**Relevant Allegations of the Complaint**</u>

The Bentleys resided in a rental housing unit that "was owned, operated, managed and/or leased by" Hickam Communities, [Complaint at ¶¶ 5-6,] as did Minor, [<u>id.</u> at ¶ 7,] and Butler, [<u>id.</u> at ¶ 8]. Hickam Communities "manage[s] and lease[s] residential housing in the City & County of Honolulu, Hawai`i pursuant to agreements with" the United States Department of the Navy ("the Navy"). [<u>Id.</u> at ¶ 33.] These agreements are part of

> a public-private venture to make productive use of residential housing previously utilized as a military housing community. Under the public-private venture, federal lands are leased to Defendants who then lease residences to private consumers, including the Plaintiffs. The public-private venture also includes the sourcing of potable water sources from a Navy-operated water system to Defendants' control.

[<u>Id.</u> at ¶ 34.] Under the leases, Hickam Communities had a duty to provide potable water to its tenants, and the tenants had the duty to pay for the utilities included with their homes. [<u>Id.</u> at ¶¶ 35-36.]

Plaintiffs argue fuel spills and/or leaks at the Red Hill Bulk Fuel Storage Facility ("Red Hill"), which is owned and operated by the Navy, contaminated the water that Hickam Communities sold to them as part of the utilities included in the lease of their home. <u>See</u> <u>id.</u> at ¶ 4. Plaintiffs allege that, because of the contamination of the water, they "have been

constructively evicted from their homes, had personal property contaminated and ruined, and/or suffered physical harm due to exposure to contaminated water." [Id.]

On November 20, 2021, the Navy reported that almost 14,000 gallons of a mixture of fuel and water were released from Red Hill's fire suppression system. [Id. at ¶ 28.] The State of Hawai`i Department of Health ("DOH") found that "the November 2021 fuel release 'caused the Red Hill Shaft, a drinking-water source for the U.S. military, to be seriously contaminated with fuel.'" [Id. at ¶ 28 & n.19 (emphasis omitted) (quoting DOH Hearing's Officer's Proposed Decision and Order, Findings of Fact, and Conclusions of Law, dated 12/27/21 ("12/27/21 DOH FOF/COL") at ¶ 36).[1]] The DOH found that "'[t]he water contamination was widespread and not unique to any one person.'" [Id. at ¶ 29.a & n.21 (quoting 12/27/21 DOH FOF/COL at ¶ 41).] In response to the November 2021 fuel release, the Red Hill Shaft, all tanks at Red Hill, the `Aiea-Hālawa Shaft, and three

_____

[1] The 12/27/21 DOH FOF/COL was issued in the contested case brought by the Navy to challenge portions of DOH's December 6, 2021 emergency order. The proposed decision and order was adopted, as amended, as DOH's final decision and order. See Wai Ola Alliance, et al. v. U.S. Dep't of the Navy, et al., CV 22-00272 LEK-RT ("Wai Ola"), Amended Unopposed Request for Judicial Notice in Support of Motion to Dismiss or, in the Alternative, Stay Proceedings (ECF No. 90), filed 12/7/23 (dkt. no. 102), Exh. D (12/6/21 emergency order), Exh. E (DOH final decision and order); Wai Ola, the plaintiffs' request for judicial notice, filed 12/22/23 (dkt. no. 108), Exh. A (12/27/21 DOH FOF/COL).

City and County of Honolulu Board of Water Supply wells were shut down. [Id. at ¶ 31.]

Plaintiffs argue that, because of prior fuel leaks/releases at Red Hill and because of Hickam Communities' relationship with the Navy, Hickam Communities knew or should have known about the risk of contamination to the water that Hickam Communities provided to Plaintiffs under their lease. Further, Hickam Communities failed to warn Plaintiffs about the risk that fuel leaks contaminated the water provided their homes. Hickam Communities did not test the water it provided to Plaintiffs to determine whether the water needed to be treated and/or replaced. Even after the November 2021 fuel spill, Hickam Communities failed to warn its tenants in a timely manner, which resulted in Plaintiffs using and drinking the contaminated water. [Id. at ¶¶ 38-39.] Plaintiffs allege the water crisis is ongoing because the water is still being tested to determine if it is safe for human consumption. [Id. at ¶ 40.] They allege that, as a result of Hickam Communities' conduct, they "suffered economic injury and damages, including but not limited to lease termination fees, relocation expenses, rent, and the loss of personal possessions." [Id. at ¶ 43.] In addition, Plaintiffs allege their damages "include but are not limited to overpayment for rent, real estate sales commissions, renter's insurance policies, personal injuries not requiring medical intervention,

damage to personal property, and property management and maintenance services." Id. at ¶ 55; see also id. at ¶¶ 102, 114 (similar).

Plaintiffs are attempting to pursue their case as a class action brought on behalf of:

> All persons who are not citizens of Hawaii at time of filing of this suit, and who, on or after November 20, 2021, reside or have resided in a housing unit entitled to receive uncontaminated potable water sold or distributed by Defendants in housing units owned, leased or operated by Hickam and who, for some period of time since November 20, 2021, did not receive such uncontaminated potable water [("the Class")].

[Id. at ¶ 13.] The Class does not include "[i]ndividuals suffering from physical injuries severe enough to require professional medical assistance." [Id.] Plaintiffs also propose a subclass consisting of: "All persons in the above Class who entered a lease contract with Defendant Hickam, and/or made payments for or towards lease rent on a housing unit entitled to receive uncontaminated potable water sold or distributed by Defendant Hickam [('the Subclass')]." [Id. at ¶ 14.]

Plaintiffs allege the requirements of numerosity, commonality, typicality, and adequacy are met as to the Class and the Subclass. [Id. at ¶¶ 15-18.] They also allege Hickam Communities' conduct is generally applicable to the Class, and the common issues related to liability and causation dominate

over the individual issues of extent of economic harm. [Id. at
¶¶ 19-21.]

Plaintiffs assert the following claims on behalf of
the Class, unless stated below: negligence ("Count I"); strict
liability ("Count II"); a claim alleging Hickam Communities has
a duty to provide medical monitoring for conditions that may
develop because of the contaminated water ("Count III"); private
nuisance ("Count IV"); an unfair and deceptive trade practices
claim by the Subclass, pursuant to Hawai`i Revised Statutes
Section 480-2 ("Count V"); a breach of the implied warranty of
habitability claim by the Subclass ("Count VI"); a trespass
claim by the Subclass ("Count VII"); a breach of contract claim
by the Subclass ("Count VIII"); and a claim by the Subclass
alleging violations of the Landlord Tenant Code, Hawai`i Revised
Statutes Chapter 521 ("Count XI"). [Id. at pgs. 17-30.]
Plaintiffs seek: certification of the Class and the Subclass;
general, special, and consequential damages, as well as treble
and punitive damages; a medical monitoring program; attorney's
fees and costs; disgorgement of profits; prejudgment interest;
injunctive relief; and any other appropriate relief. [Id. at
pgs. 31-32.]

## II.  **The Instant Motion**

Hickam Communities argues Plaintiffs' leases each
contains a provision identifying mandatory dispute resolution

7

procedures, and Plaintiffs have not complied with their respective provisions. Further, because the provisions do not mention class arbitration, Plaintiffs cannot pursue class claims in arbitration. Hickam Communities therefore argues this Court should compel Plaintiffs to arbitrate their individual claims. [Motion, Mem. in Supp. at 1.]

Kristofer Bentley entered into a Residential Lease Agreement with Hickam Communities for a term from October 23, 2020 for twelve months, continuing on a month-to-month basis thereafter ("Bentley Lease"). [Motion, Declaration of Phillip Carpenter ("Carpenter Decl."),[2] Exh. B (Bentley Lease).] Phyllis Minor ("Minor") entered into a Residential Lease Agreement with Hickam Communities for a term from March 31, 2021 for twelve months, continuing on a month-to-month basis thereafter ("Minor Lease"). [Id., Exh. C (Minor Lease).] Christian Butler ("Butler") entered into a Tenant Lease (Active Duty Military Member) with Hickam Communities for a term from October 18, 2016 for twelve months, continuing on a month-to-month basis thereafter ("Butler Lease"). [Id., Exh. D (Butler Lease).]

---

[2] Phillip Carpenter ("Carpenter") is the Chief Operating Officer of Lendlease (US) Public Partnerships Holdings LLC ("Lendlease"), which is the majority owner of Hickam Communities. [Carpenter Decl. at ¶¶ 1, 5.]

Kasey Bentley was identified as one of the other authorized occupants of the leased premises. [Carpenter Decl., Exh. B (Bentley Lease) at PageID.141.] The Bentley Lease states:

> All disputes between the parties of this Agreement shall be resolved by mediation and/or binding arbitration in accordance with the terms and provisions of the Resident Guide. The prevailing party in binding arbitration and/or other legal process shall be entitled to recover its reasonable attorneys' fees and costs incurred in relation to the dispute from the non-prevailing party.

[Id. at PageID.147, § 17.] The Minor Lease contains an identical dispute resolution provision. See Carpenter Decl., Exh. C (Minor Lease) at PageID.169, § 19. The dispute resolution provision in the Butler Lease states: "Without limiting the rights and remedies of the Tenant and the Landlord under applicable laws, the Tenant and the Landlord may refer disputes to the Privatization Flight Chief, Joint Base Pearl Harbor-Hickam for resolution." [Id., Exh. D (Butler Lease) at PageID.190, § 14.]

Hickam Communities argues that, because Plaintiffs' leases do not reference state law, there is a strong presumption that the Federal Arbitration Act ("FAA") applies to the arbitration agreement and to any arbitration conducted pursuant thereto. Even without the presumption, the FAA would still apply because it preempts contrary state arbitration law. Thus, Hickam Communities contends this Court must apply the FAA and must determine whether there was a valid arbitration agreement and

9

whether the dispute falls within the scope of the agreement. [Motion, Mem. in Supp. at 6-7.] Hickam Communities argues the Bentley Lease and the Minor Lease reflect unambiguous, enforceable agreements to arbitrate or mediate, and therefore this Court should dismiss the Bentleys' and Minor's claims or, in the alternative, stay them. [Id. at 9.] Hickam Communities acknowledges that the Butler Lease does not require arbitration, but Hickam Communities argues the alternative dispute resolution provision in the Butler Lease should be enforced. [Id. at 10-11.]

Hickam Communities subsequently acknowledged that, under Smith v. Spizzirri, 601 U.S. 472, 144 S. Ct. 1173 (2024), a district court is required to stay claims that it compels be arbitrated. Hickam Communities therefore amends its request in the Motion and asks that this Court compel the arbitration of Plaintiffs' individual, non-class claims and stay the corresponding claims in this case. However, Hickam Communities argues Plaintiffs' class claims must be dismissed because there is no class representative. [Reply at 1 n.1.]

**STANDARD**

Title 9 United States Code Section 2 states:

A written provision in any maritime transaction or a contract evidencing **a transaction involving commerce** to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole

10

or any part thereof, or an agreement in writing
to submit to arbitration an existing controversy
arising out of such a contract, transaction, or
refusal, shall be valid, irrevocable, and
enforceable, save upon such grounds as exist at
law or in equity for the revocation of any
contract or as otherwise provided in chapter 4.

(Emphasis added.) The term "involving commerce" is interpreted

broadly.

The Supreme Court considered the scope of
Section 2 in Allied-Bruce Terminix Cos. v.
Dobson, 513 U.S. 265, 115 S. Ct. 834, 130 L. Ed.
2d 753 (1995). The Court had previously concluded
that the FAA preempts state law, and in Allied-
Bruce it considered the breadth of the FAA's
reach, as set forth in Section 2. Id. at 272-73,
115 S. Ct. 834. The Court examined the phrase "a
contract evidencing a transaction involving
commerce" in two steps. First, the Court noted
that the words "'involving commerce' . . . are
broader than the often-found words of art 'in
commerce.'" Id. at 273, 115 S. Ct. 834. The Court
held that the phrase "involving commerce" is "the
functional equivalent of" the phrase "affecting
commerce," which "normally signals Congress'
intent to exercise its Commerce Clause powers to
the full." Id. at 273-74, 115 S. Ct. 834. Second,
the Court considered the language "evidencing a
transaction" involving commerce. Id. at 277, 115
S. Ct. 834. The Court read this phrase broadly,
holding that the transaction must involve
interstate commerce, but that the parties to the
transaction need not have contemplated that the
transaction had an interstate commerce
connection. Id. at 281, 115 S. Ct. 834.

The Court noted in passing in Allied-Bruce
that Section 1 of the FAA "defin[ed] the word
'commerce' in the language of the Commerce Clause
itself." 513 U.S. at 274, 115 S. Ct. 834; see 9
U.S.C. § 1 ("'[C]ommerce', as herein defined,
means commerce among the several States or with
foreign nations, or in any Territory of the
United States or in the District of Columbia, or

11

> between any such Territory and another, or
> between any such Territory and any State or
> foreign nation, or between the District of
> Columbia and any State or Territory or foreign
> nation[.]").

Rogers v. Royal Caribbean Cruise Line, 547 F.3d 1148, 1154 (9th

Cir. 2008) (alterations in Rogers).

      If the FAA applies to an arbitration agreement, this

Court determines whether an issue is arbitrable

> "by applying the federal substantive law of
> arbitrability,' Mitsubishi Motors [Corp. v. Soler
> Chrysler-Plymouth, Inc.], 473 U.S. [614,] 626,
> 105 S. Ct. 3346 [(1985),] "absent clear and
> unmistakable evidence that the parties agreed to
> apply non-federal arbitrability law." Cape
> Flattery [Ltd. v. Titan Maritime, LLC], 647 F.3d
> [914,] 921 [(9th Cir. 2011)] (internal quotation
> marks omitted).

Brennan v. Opus Bank, 796 F.3d 1125, 1129 (9th Cir. 2015) (some

brackets omitted).

## DISCUSSION

## I.  Jurisdiction

      At the outset, this Court notes that there is a

similar case against Hickam Communities before this Court,

Jabour et al. v. Hickam Communities, LLC, CV 24-00001 LEK-KJM

("Jabour"). The Jabour plaintiffs filed a Motion for an Order of

Remand on February 5, 2024, [Jabour, dkt. no. 11,] and that

motion was denied in an order filed on May 20, 2024 ("Jabour
5/20 Order"). [Id., dkt. no. 20.³]

Although Plaintiffs did not file a motion for remand
in the instant case, this Court must *sua sponte* consider whether
subject matter jurisdiction exists. Cf. HayDay Farms, Inc. v.
FeeDx Holdings, Inc., 55 F.4th 1232, 1238 (9th Cir. 2022) ("It
is the duty of federal courts to assure themselves that their
jurisdiction is not being exceeded. Lack of subject matter
jurisdiction can be . . . raised by a court sua sponte."
(quotation marks and citations omitted)).

Because Hickam Communities is the defendant in both
cases and because the two cases have the same factual bases and
assert the same claims, this Court concludes that its rulings
regarding Hickam Communities in the Jabour 5/20 Order also apply
to Hickam Communities in the instant case. Thus, this Court
concludes that Hickam Communities is a citizen of Delaware and
New York for purposes of Section 1332(a). See Jabour 5/20 Order,
2024 WL 2272715, at *5.

There is no express allegation in the Complaint
regarding Plaintiffs' citizenship. However, because the Class is
comprised of "persons who are not citizens of Hawaii at time of
filing of this suit," and Plaintiffs assert "they are similarly

---

³ The Jabour 5/20 Order is also available at 2024 WL
2272715.

situated" to the Class, this Court finds that Plaintiffs are not citizens of Hawai`i. See Complaint at ¶¶ 13, 18. In the Notice of Removal, Hickam Communities asserted that, based on its investigation, "none of the named Plaintiffs reside in, or are citizens of, Delaware or New York." [Notice of Removal at pg. 7, § IV.A.1.b.] Because Plaintiffs did not contest this assertion by filing a motion for remand, this Court finds that Plaintiffs are not citizens of either Delaware or New York. Thus, this Court concludes, for purposes of this *sua sponte* jurisdictional analysis, that complete diversity exists. See Demarest v. HSBC Bank USA, N.A., 920 F.3d 1223, 1226 (9th Cir. 2019) (stating § 1332(a) "requires 'complete diversity' of citizenship, meaning that 'the citizenship of each plaintiff is diverse from the citizenship of each defendant'" (quoting Caterpillar Inc. v. Lewis, 519 U.S. 61, 68, 117 S. Ct. 467, 136 L. Ed. 2d 437 (1996))).

Further, considering the Notice of Removal's representations about the amount in controversy in light of the analysis in the Jabour 5/20 Order, this Court finds that the $75,000 amount in controversy requirement is satisfied in this case. See Notice of Removal at pgs. 7-10, § IV.A.2; Jabour 5/20 Order, 2024 WL 2272715, at *5-8. This Court therefore concludes

that diversity jurisdiction exists in this case.[4] See 28 U.S.C. § 1332(a)(1).

Turning to the merits of Hickam Communities' Motion, this Court notes that the sections discussing whether to compel arbitration address only the Bentleys' claims and Minor's claims. Butler's claims are addressed in a separate section.

## II.  **Whether the FAA Applies**

This Court first considers Plaintiffs' arguments that Hickam Communities has not shown that either the Bentley Lease or the Minor Lease is "'a contract evidencing a transaction involving [interstate] commerce,'" [Mem. in Opp. at 1 n.1 (alteration in Mem. in Opp.) (quoting 9 U.S.C. § 2),] and that the FAA does not apply to a residential lease, [id. at 1-2 n.1 (citing cases)]. This Court rejects Plaintiffs' argument for the reasons set forth in the order compelling the plaintiffs in Jabour to arbitrate their individual claims. See Jabour, Order Granting in Part and Denying in Part Defendant's Motion to Compel Arbitration and to Dismiss or Stay Plaintiffs' Claims, Filed November 17, 2023, filed 9/20/24 (dkt. no. 30) ("Jabour 9/20 Order"), at 11-14. This Court therefore concludes that the FAA applies to the Bentley Lease and the Minor Lease because

---

[4] Because this Court concludes that diversity jurisdiction exists in this case, it is not necessary for this Court to address either CAFA jurisdiction or federal officer removal jurisdiction.

each is "a contract evidencing a transaction involving commerce."

## II.  **Whether There Is an Arbitrable Claim**

Because the FAA applies to the Bentley Lease and the Minor Lease, this Court determines whether an issue is arbitrable "'by applying the federal substantive law of arbitrability,' Mitsubishi Motors, 473 U.S. at 626, 105 S. Ct. 3346 absent clear and unmistakable evidence that the parties agreed to apply non-federal arbitrability law." Brennan, 796 F.3d at 1129 (some citations and internal quotation marks omitted). The arbitration provision in the Lease does not reference Hawai`i law. Further, the relevant provision in the Hickam Communities Resident Guide, which is referred to in the Lease, does not refer to Hawai`i law. Federal law is therefore applicable because there is no clear and unmistakable indication that the parties intended to apply Hawai`i law regarding arbitrability. The applicable principles under federal are described in the Jabour 9/20 Order, and the same principles are applied here. See Jabour 9/20 Order at 15-16 (quoting Loftus v. H&R Block, CIV. NO. 20-00568 JMS-KJM, 2021 WL 4437491, at *1-2 (D. Hawai`i Sept. 27, 2021)).

In the instant case, the Bentley Lease is in writing, as is the Minor Lease. Each lease unambiguously states all disputes between the parties to the lease "shall be resolved by

16

mediation and/or binding arbitration." <u>See</u> Carpenter Decl., Exh. B (Bentley Lease) at PageID.147, § 17; <u>id.</u>, Exh. C (Minor Lease) at PageID.169, § 19. For the reasons stated in the <u>Jabour</u> 9/20 Order, the fact that the Bentley Lease and the Minor Lease refer to "mediation and/or binding arbitration" does not mean a lack of intent to submit to arbitration,[5] and this Court finds that section 17 of the Bentley Lease and section 19 of the Minor Lease each evinces an agreement on the essential terms. <u>See</u> <u>Jabour</u> 9/20 Order at 17-19.

Further, bilateral consideration exists because the parties to both leases agree to submit to mediation and/or arbitration. However, Plaintiffs argue that the Bentley Lease and the Minor Lease reference remedies that constitute Hickam Communities' reservation of its right to seek judicial remedies, rendering Hickam Communities' agreement to forgo judicial remedies illusory. <u>See</u> Mem. in Opp. at 8-10. The references that Plaintiffs rely upon include:

-the Mold & Mildew Addendum, which states: "A default under the terms of this Addendum shall be deemed a material default under the terms of the [Residential Leasing Agreement], and Landlord shall be entitled to exercise all rights and remedies at law or in equity." [Carpenter Decl., Exh. B

---

[5] Plaintiffs raise their ambiguity argument in the context of their position that the arbitration agreements in the Bentley Lease and the Minor Lease are unenforceable and should be invalidated. <u>See</u> Mem. in Opp. at 4-11. However, their ambiguity argument is more appropriately addressed in the context of the issue of whether the contract is ambiguous as to whether the parties intended to submit to arbitration.

(Bentley Lease) at PageID.151 (second page of Mold & Mildew Addendum), Violation Addendum; id., Exh. C (Minor Lease) at PageID.174 (same);]

-multiple reservations of Hickam Communities' right to seek eviction; [id., Exh. B (Bentley Lease) at PageID.141, § 2; PageID.144, § 4(b); PageID.145-46, §§ 7, 9, 11, 13; id., Exh. C (Minor Lease) at PageID.165, § 2; PageID.166, § 7; PageID.168, §§ 8(a), 8(c), 10, 12, 13; PageID.169, §§ 14, 15; PageID.171, § 28;[6]]

-Hickam Communities' reservation of rights to assert claims for monetary damages; [id., Exh. B (Bentley Lease) at PageID.146, § 9; id., Exh. C (Minor Lease) at PageID.168, § 10;]

-its reservation of rights to recover court costs; [id., Exh. B (Bentley Lease) at PageID.146, § 12; id., Exh. C (Minor Lease) at PageID.168, § 13;]

-its reservation of rights to pursue a "suit brought against Resident in court to collect the debt" for items "including, but not limited to, rent, utilities, and damages to the Premises, which are not paid within 30 days of the date due," [id., Exh. B (Bentley Lease) at PageID.145, § 6;] and

-its reservation of rights to "bring an action or proceeding for waste or for breach of contract for damage suffered by the Resident's willful or negligent failure to comply with the Resident's obligations to maintain the Premises under this Agreement or the [Hickam Communities] Resident Guide," [id., Exh. C (Minor Lease) atPageID.168, § 12].

The plaintiffs in Jabour raised the same argument, relying on the same or comparable lease provisions. This Court rejected their argument and concluded that the lease evidenced an unambiguous intent to submit disputes to arbitration or

---

[6] Section 28 of the Minor Lease refers to "an action in summary possession (eviction) and for damages." [Carpenter Decl., Exh. C (Minor Lease) at PageID.171.]

mediation and was supported by bilateral consideration. See
Jabour 9/20 Order at 19-22. Based on the analysis set forth in
Jabour, this Court also concludes that, although it is a close
question, the Bentley Lease and the Minor Lease each evidences
an unambiguous intent to submit disputes to arbitration or
mediation and is supported by bilateral consideration. See
Douglass v. Pflueger Haw., Inc., 110 Hawai`i 520, 531, 135 P.3d
129, 140 (2006). Thus, there is an enforceable arbitration
agreement in each instance unless the Bentleys and/or Minor
establish a contract defense invalidating the respective
arbitration agreement. See AT&T Mobility LLC v. Concepcion, 563
U.S. 333, 339 (2011).

## III. **Unconscionability**

Plaintiffs argue the arbitration provisions in the
Bentley Lease and the Minor Lease are unenforceable because they
are procedurally and substantively unconscionable. [Mem. in Opp.
at 13-15.] The applicable principles regarding unconscionability
are described in the Jabour 9/20 Order, and the same principles
are applied here. See Jabour 9/20 Order at 22-24 (quoting
Narayan v. The Ritz-Carlton Dev. Co., 140 Hawai`i 343, 350-52,
400 P.3d 544, 551-53 (2017)).

### A. **Procedural Unconscionability**

As to both the Bentleys and Minor, Hickam Communities
had greater bargaining power, and the Bentley Lease and the

19

Minor Lease are form documents. The Bentleys and Minor state they believed that they had no choice but to accept the leases they were offered on a take-it-or-leave-it basis. See Mem. in Opp., Declaration of Kristofer W. Bentley ("K. Bentley Decl.") at ¶ 10 ("Because housing is essential but in short supply in Hawaii, and Hickam [Communities] controls a large amount of housing, I didn't feel I had any meaningful choice but to accept Hickam [Communities'] take it or leave it terms if I wanted housing."); id., Declaration of Phyllis A. Minor ("Minor Decl.") at ¶ 10 (same). The Bentleys and Minor also complain that their respective leases and other papers that came with the leases were confusing because of the multiple parts and overall length. [K. Bentley Decl. at ¶ 6; Minor Decl. at ¶ 6.] However, in each case, the main lease document is ten pages or less in length, and the dispute provision is in a separate section that is clearly numbered and titled. See Carpenter Decl., Exh. B (Bentley Lease) at PageID.140-49; id., Exh. C (Minor Lease) at PageID.165-72. The arbitration provisions of the Bentley Lease and the Minor Lease do not present the type of unfair surprise necessary to establish procedural unconscionability. See, e.g., Narayan, 140 Hawai`i at 351, 400 P.3d at 552. Thus, the Bentleys and Minor have failed to prove procedural unconscionability.

## B.   <u>Substantive Unconscionability</u>

Plaintiffs argue the arbitration provisions in the Bentley Lease and the Minor Lease are substantively unconscionable because Hickam Communities reserved the right to pursue judicial remedies and because the Bentleys and Minor may have to pay costs in arbitration that they would not have been required to pay in a judicial action. [Mem. in Opp. at 14.] As stated *supra*, it is a close question whether Hickam Communities impermissibly reserved judicial remedies for itself. <u>Accord</u> <u>Jabour</u> 9/20 Order at 26. However, because any such provisions are severable from the arbitration provision, this Court concludes that they do not warrant a finding of substantive unconscionability.

As to their costs of arbitration argument, Plaintiffs assert that: "Forcing costs of arbitration on a party when it would be prohibitively expensive for that party, such as the arbitration provisions here attempt to do, is sufficient reason alone to hold the arbitration agreement unconscionable as impermissibly one-sided." [Mem. in Opp. at 15 (citing <u>Gabriel v. Island Pac. Acad., Inc.</u>, 140 Haw. 325, 338, 400 P.3d 526, 539 (2017)).] The plaintiffs in <u>Jabour</u> raised the same argument, and this Court rejected it. <u>See</u> <u>Jabour</u> 9/20 Order at 26-28. For the reasons stated in <u>Jabour</u>, this Court also concludes that <u>Gabriel</u>

21

is distinguishable from the instant case, which does not present circumstances comparable to the facts in <u>Gabriel</u>.

On balance, based on the facts presented, the terms of the arbitration provision in the Bentley Lease and in the Minor Lease are not so one-sided as to render either lease substantively unconscionable. Because the Bentleys and Minor have failed to establish a defense to the enforceability of their respective arbitration provisions, this Court concludes that the arbitration provision in the Bentley Lease and the arbitration provision in the Minor Lease are valid and enforceable.

## IV.   <u>Other Authorized Occupants</u>

The Bentley Lease is between Kristofer Bentley as the "Resident" and Hickam Communities; and Kasey Bentley is an authorized occupant as Kristopher's spouse. <u>See</u> Carpenter Decl., Exh. B (Bentley Lease) at PageID.140-41. To the extent that the Bentleys argue Kasey Bentley, who is not a party to the Bentley Lease, is not bound by the arbitration provision, that argument is rejected.

The Bentley Lease states: "Resident agrees and acknowledges that the spouse and any other authorized occupant listed in Section 2 has no independent or separate right under this Lease to occupy the Premises." [<u>Id.</u> at PageID.141, § 2.] Any rights that Kasey Bentley had arising from the occupancy of

the Premises were dependent upon Kristofer Bentley's rights under the Bentley Lease. Further, "[w]hile the FAA requires a writing, it does not require that the writing be signed by the parties." Nghiem v. NEC Elec., Inc., 25 F.3d 1437, 1439 (9th Cir. 1994) (citation and internal quotation marks omitted). Thus, although Kasey Bentley did not sign the Bentley Lease as a Resident, Kasey Bentley is bound by the arbitration provision in the Bentley Lease.

Hickam Communities' Motion is granted insofar as the Bentleys are required to arbitrate their individual claims and insofar as Minor is required to arbitrate her individual claims. The Bentleys' individual claims and Minor's individual claims are stayed, pending the outcome of the arbitration. See 9 U.S.C. § 3; Smith v. Spizzirri, 601 U.S. 472, 478, 144 S. Ct. 1173, 1178 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").[7]

## V.  __Class Claims__

Hickam Communities does not seek to compel arbitration of the class claims brought by the Bentleys and Minor because

---

[7] Section 3 contains an exception when the party seeking a stay is default in the arbitration proceeding, but there is no indication that this exception applies under the circumstances of this case.

the arbitration provisions in the Bentley Lease and the Minor Lease are both silent as to class arbitration. See Lamps Plus, Inc. v. Varela, 587 U.S. 176, 178-79 (2019). However, Hickam Communities argues in its reply that their class claims should be dismissed because the Bentleys and Minor cannot be class representatives. See Reply at 14-15. Because this is a new request that was not raised in the Motion, this Court will not address it. Cf. Local Rule LR7.2 ("Any argument raised for the first time in the reply shall be disregarded.").

This Court stays the class claims brought by the Bentleys and Minor because the outcome of the arbitration will affect the litigation of the class claims.

**VI.  Butler's Claims**

As previously noted, the dispute resolution provision in the Butler Lease allows the referral of disputes to the Privatization Flight Chief, Joint Base Pearl Harbor-Hickam ("PFC JBPHH"). See Carpenter Decl., Exh. D (Butler Lease) at PageID.190, § 14. Hickam Communities has exercised its right to refer Butler's dispute to the PFC JBPHH. See id., Exh. F (email dated 1/22/24 to Plaintiffs' counsel from Hickam Communities' counsel). Hickam Communities argues the same public policy that favors enforcement of the arbitration provisions in the Bentley Lease and the Minor Lease also applies to honoring the alternate dispute resolution process agreed upon in the Butler Lease.

24

[Motion, Mem. in Supp. at 10-11 (citing Leppind v. Mukasey, 530
F.3d 862, 863 (9th Cir. 2008); Bowen v. Hunsaker Hirai
Consulting, Inc. v. Turk, 2013 WL 5442980, at *6 (Haw. Ct. App.
2013)).] Therefore, Hickam Communities argues this Court should
still dismiss Butler's claims or stay them pending the
resolution of the process before the PFC JBPHH. [Id. at 11.]

Hickam Communities is correct that, under both federal
law and Hawai`i law, there is a strong policy interest favoring
alternative dispute resolution. See, e.g., Leppind, 530 F.3d at
863 (noting "the strong judicial policy that favors settlements
of disputes" (citation and quotation marks omitted)); Bowen
Hunsaker Hirai, 2013 WL 5442980, at *6 (noting that "public
policy strongly favors alternative dispute resolution over
litigation"). However, Hickam Communities has not cited, nor is
this Court aware of any, case law that permits a court to
utilize the FAA to enforce a dispute resolution provision that
does not refer to arbitration. This Court therefore denies
Hickam Communities' Motion as to Butler's individual claims and
as to the class claims brought by Butler.

## CONCLUSION

For the foregoing reasons, Hickam Communities'
January 24, 2024 Motion to Compel Arbitration and to Dismiss or
Stay Plaintiffs' Claims, Filed November 17, 2023, is HEREBY
GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED

insofar as: the Bentleys and Minor are ORDERED to arbitrate their individual claims; and the Bentleys' and Minor's individual claims and class claims are STAYED pending the outcome of the arbitration. Hickam Communities' Motion is DENIED as to its request for dismissal of the Bentleys' and Minor's claims. The Motion is also DENIED as to Butler's individual claims and class claims.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 23, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**KASEY N. BENTLEY, ETC., ET AL. VS. HICKAM COMMUNITIES LLC, ET AL.**; CV 24-00007 LEK-KJM; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY PLAINTIFFS' CLAIMS, FILED NOVEMBER 17, 2023