UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| KASEY N. BENTLEY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; KRISTOFER W. BENTLEY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; PHYLLIS A. MINOR, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; AND CHRISTIAN BUTLER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED;<br><br>                Plaintiffs,<br><br>    vs.<br><br>HICKAM COMMUNITIES LLC,  DOE DEFENDANTS 1-20,<br><br>                Defendants. | CIV. NO. 24-00007 LEK-KJM |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS PLAINTIFF
CHRISTIAN BUTLER'S COMPLAINT, FILED NOVEMBER 17, 2023**

Before the Court is Defendant Hickam Communities, LLC's ("Hickam Communities") Motion to Dismiss Plaintiff Christian Butler's Complaint, Filed November 17, 2023 ("Motion"), filed on October 29, 2024. [Dkt. no. 29.] Plaintiffs Kasey N. Bentley, Kristofer W. Bentley, Phyllis A. Minor, and Christian Butler, individually and on behalf of all others similarly situated ("Plaintiffs") filed their memorandum in opposition on December 20, 2024, and Hickam Communities filed its reply on December 27, 2024. [Dkt. nos. 32, 33.] This matter

came on for hearing on January 10, 2025. Hickam Communities'
Motion is hereby granted in part and denied in part for the
reasons set forth below.

Specifically, the Motion is denied as to Hickam
Communities' request for dismissal for failure to join an
indispensable party, and the Motion is granted in part and
denied in part as to Hickam Communities' request for dismissal
for failure to state a claim. The claims at issue in the Motion
are dismissed, with the exception of a portion of Butler's claim
asserting breach of the implied warranty of habitability and a
portion of Butler's Hawai`i Revised Statutes Chapter 521 claim.
The dismissal of Butler's strict liability claim, medical
monitoring claim, and unfair and deceptive acts or practices
claim is with prejudice, and the dismissal of the other claims
at issue in the Motion is without prejudice. Plaintiffs' amended
complaint shall be filed by **May 14, 2025.**

## BACKGROUND

Plaintiffs filed their Complaint in the State of
Hawai`i Circuit Court of the First Circuit ("state court") on
November 17, 2023, and the case was removed to this district
court on January 4, 2024. See Notice of Removal, filed 1/4/24
(dkt. no. 1), Exh. A (Complaint).

The Bentleys resided in a rental housing unit that
"was owned, operated, managed and/or leased by" Hickam

2

Communities, [Complaint at ¶¶ 5-6,] as did Minor, [id. at ¶ 7,] and Butler, [id. at ¶ 8]. Hickam Communities "manage[s] and lease[s] residential housing in the City & County of Honolulu, Hawai`i pursuant to agreements with" the United States Department of the Navy ("the Navy"). [Id. at ¶ 33.] Plaintiffs allege that, under the leases, Hickam Communities had a duty to provide potable water to its tenants, and the tenants had the duty to pay for the utilities included with their homes. [Id. at ¶¶ 35-36.]

Plaintiffs argue fuel spills and/or leaks at the Red Hill Bulk Fuel Storage Facility ("Red Hill"), which is owned and operated by the Navy, contaminated the water that Hickam Communities sold to them as part of the utilities included in the leases of their homes. See id. at ¶ 4. The water that Hickam Communities delivered to Plaintiffs came from a water system that is operated by the Navy ("Water System"). [Id.] Plaintiffs allege that, because of the contamination of the water, they "have been constructively evicted from their homes, had personal property contaminated and ruined, and/or suffered physical harm due to exposure to contaminated water." [Id.]

Plaintiffs argue that, because of prior fuel leaks/releases at Red Hill, and because of Hickam Communities' relationship with the Navy, Hickam Communities knew or should have known about the risk of contamination to the water that

3

Hickam Communities provided to Plaintiffs under their leases. Further, Hickam Communities failed to warn Plaintiffs about the risk that fuel leaks contaminated the water that was provided to their homes. Hickam Communities did not test the water it provided to Plaintiffs to determine whether the water needed to be treated and/or replaced. Even after the November 2021 fuel spill, Hickam Communities failed to warn its tenants in a timely manner, which resulted in Plaintiffs using and drinking the contaminated water. [Id. at ¶¶ 38-39.]

Plaintiffs are attempting to pursue their case as a class action brought on behalf of a proposed class described in paragraph 13 of the Complaint, and on behalf of a proposed subclass described in paragraph 14 of the Complaint. See id. at pg. 5. Plaintiffs assert the following claims on behalf of the Class, unless stated below: negligence ("Count I"); strict liability ("Count II"); a claim alleging Hickam Communities has a duty to provide medical monitoring for conditions that may develop because of the contaminated water ("Count III"); private nuisance ("Count IV"); an unfair and deceptive trade practices ("UDAP") claim and an unfair methods of competition ("UMOC") claim by the Subclass, pursuant to Hawai`i Revised Statutes Section 480-2 ("Count V"); a breach of the implied warranty of habitability claim by the Subclass ("Count VI"); a trespass claim by the Subclass ("Count VII"); a breach of contract claim

4

by the Subclass ("Count VIII"); and a claim by the Subclass alleging violations of the Landlord Tenant Code, Hawai`i Revised Statutes Chapter 521 ("Count XI"). See id. at pgs. 17-30. Plaintiffs seek: certification of the Class and the Subclass; general, special, and consequential damages, as well as treble and punitive damages; a medical monitoring program; attorney's fees and costs; disgorgement of profits; prejudgment interest; injunctive relief; and any other appropriate relief. See id. at pgs. 31-32.

Plaintiffs Kasey N. Bentley and Kristofer W. Bentley ("the Bentleys") and Plaintiff Phyllis A. Minor ("Minor") have been ordered to arbitrate their individual claims, and the Bentleys' and Minor's individual claims and the class claims have been stayed pending the outcome of the arbitration. See Order Granting in Part and Denying in Part Defendant's Motion to Compel Arbitration and to Dismiss or Stay Plaintiffs' Claims, Filed November 17, 2023, filed 9/23/24 (dkt. no. 25) ("9/23/24 Order"), at 25-26.[1] Thus, only Plaintiff Christian Butler's ("Butler") claims are currently pending.

In the instant Motion, Hickam Communities first argues Butler's claims should be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(7) because Butler failed to join an

---

[1] The 9/23/24 Order is also available at 2024 WL 4267796.

indispensable party – the Navy. [Motion at 2.] Hickam
Communities also argues Butler's claims should be dismissed,
pursuant to Federal Rules of Civil Procedure 12(b)(6) for
failure to state a claim because: residential landlords are not
subject to strict liability for conditions on their property;
medical monitoring is not an independent cause of action; Butler
lacks standing to bring a UDAP claim; Butler fails to allege the
nature of competition element of a UMOC claim; and Butler's
nuisance, trespass, breach of the implied warranty of
habitability, and Landlord Tenant Code claims fail because they
are not supported by adequate factual allegations. [Id.]

## DISCUSSION

## I.    Failure to Join Indispensable Party

Hickam Communities urges this Court to dismiss
Butler's claims pursuant to Federal Rule of Civil
Procedure 12(b)(7) because Hickam Communities contends the Navy
is an indispensable party. Hickam Communities emphasizes that
the relief Butler seeks concerns Navy property, and his claims
are based on actions and omissions of the Navy. Hickam
Communities contends the relief that Butler seeks will have a
substantial impact upon the Navy's interests and upon any claims
and defenses the Navy may have. [Motion, Mem. in Supp. at 3.]

> The Ninth Circuit has set forth a three-step
> inquiry to determine whether a case should be
> dismissed under Rule 12(b)(7) for failure to join

an indispensable party. <u>See</u> <u>EEOC v. Peabody W.</u>
<u>Coal Co.</u>, 400 F.3d 774, 779-80 (9th Cir. 2005).

First, the court must determine if the party
is a necessary party, <i>i.e.</i>, whether the "nonparty
should be joined under Rule 19(a)." <u>Id.</u> at 779;
<u>see also</u> <u>Salt River Agr. Imp. & Power Dist. v.</u>
<u>Lee</u>, 672 F.3d 1176, 1179 (9th Cir. 2012). Second,
the court must determine whether it is feasible
to order that the absent necessary party be
joined. <u>Peabody</u>, 400 F.3d at 779. Third, if
joinder is not feasible, the court must determine
"whether the case can proceed without the
absentee, or whether the absentee is an
'indispensable party' such that the action must
be dismissed." <u>Id.</u> If the litigation cannot
proceed without the necessary party under
Rule 19(b), then the party is considered to be an
indispensable party. <u>Lyon v. Gila River Indian</u>
<u>Cmty.</u>, 626 F.3d 1059, 1070 (9th Cir. 2010).

<u>Kabukshikigaisha v. Agu Ramen, LLC</u>, CIVIL NO. 19-00379 JMS-KJM,

2019 WL 7499948, at *4 (D. Hawai`i Sept. 17, 2019).

Federal Rule of Civil Procedure 19(a)(1) states:

A person who is subject to service of process and
whose joinder will not deprive the court of
subject-matter jurisdiction must be joined as a
party if:

(A)  in that person's absence, the court
cannot accord complete relief among existing
parties; or

(B)  that person claims an interest relating
to the subject of the action and is so
situated that disposing of the action in the
person's absence may:

(i)  as a practical matter impair or
impede the person's ability to protect
the interest; or

(ii) leave an existing party subject to
a substantial risk of incurring double,

7

> multiple, or otherwise inconsistent
> obligations because of the interest.

"Rule 19(a)(1)(A) 'is concerned . . . with precluding multiple lawsuits on the same cause of action.'" Kabukshikigaisha, 2019 WL 7499948, at *5 (alteration in Kabukshikigaisha) (quoting Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030, 1043 (9th Cir. 1983)). In contrast,

> Rule 19(a)(1)(B) is "contingent . . . upon an
> initial requirement that the absent party **claim** a
> legally-protected interest relating to the
> subject matter of the action." Altmann v.
> Republic of Austria, 317 F.3d 964, 971 (9th Cir.
> 2002), as amended by 327 F.3d 1246 (9th Cir.
> 2003) (emphasis in Altmann) (citations and
> internal quotation marks omitted); see also
> Northrop Corp., 705 F.2d at 1043 ("Subparts (i)
> and (ii) are contingent . . . upon an initial
> requirement that the absent party claim a
> legally-protected interest relating to the
> subject matter of the action."). "Where a party
> is aware of an action and chooses not to claim an
> interest, the district court does not err by
> holding that joinder [is] 'unnecessary.'"
> Altmann, 317 F.3d at 971 (citing United States v.
> Bowen, 172 F.3d 682, 689 (9th Cir. 1999)).

Id. (alterations in Kabukshikigaisha).

In the instant case, the Complaint prays for preliminary and permanent injunctions that, *inter alia*, require Hickam Communities to "[g]ive warning to existing tenants of the known existence of water contamination in residential units and about the premises," and prohibit Hickam Communities "from entering into any new leases for residential property until [Hickam Communities] adequately address[es] the substantial

8

water contamination that render the units uninhabitable."[2]
[Complaint at pg. 31, ¶¶ G.i, G.v.] The relief that Butler seeks
could arguably be awarded in the Navy's absence. Thus, because
complete relief among the existing parties is possible in the
Navy's absence, Rule 19(a)(1)(A) does not apply.

The Navy undoubtedly has an interest in the Navy-
operated Water System and in the property that the Navy
contracts with Hickam Communities to lease to persons such as
Butler. However, issues such as Hickam Communities' control, or
lack thereof, over the Navy-operated Water System and whether
Hickam Communities was required to utilize the Navy-operated
Water System, can be addressed through Hickam Communities'
answer and a third-party complaint, such as has been done in
similar cases brought by residential tenants affected by water
contaminated by Red Hill's operations. See, e.g., Camp et al. v.
Ohana Mil. Cmtys., LLC et al., CV 24-00003 LEK-KJM ("Camp"),
Defendants Ohana Military Communities LLC and Hunt MH Property
Management, LLC's Answer to Complaint Filed November 17, 2023;
Defendants and Third-Party Plaintiffs Ohana Military
Communities, LLC and Hunt MH Property Management, LLC's Third-
Party Complaint Against United States of America, filed 8/13/24

---

[2] Butler does not seek an injunction requiring Hickam
Communities to remedy the conditions that caused and/or are
causing the water contamination.

(dkt. no. 27). Thus, allowing Butler to proceed with his claims in the instant case would not impair or impede the Navy's ability to protect its interests and would not leave Hickam Communities subject to possible multiple or inconsistent obligations because Hickam Communities is motivated to, and will likely be able to, bring a third-party complaint against the Navy.

During the hearing on the Motion, Hickam Communities argued that it is not similarly situated to the defendants in Camp, and it is unlikely that the Navy will answer a third-party complaint in the instant case. However, at this stage of the instant case, Hickam Communities merely speculates that it will be unable to bring a third-party claim against the Navy. Such speculation is insufficient to support a Rule 12(b)(7) dismissal.

This Court therefore concludes, for the purposes of the instant Motion, that the Navy is not a necessary party under Rule 19(a). Further, even if the Navy was a necessary party, the joinder of the Navy through a third-party complaint is feasible. In light of those rulings, it is not necessary to address whether this case can proceed under Rule 19(b) without the Navy.

The Motion is denied as to Hickam Communities' request to dismiss Butler's claims under Rule 12(b)(7). The denial is without prejudice to the filing of a new Rule 12(b)(7) motion if

10

further developments in this case indicate that the Navy cannot
be joined.

## II.  **Failure to State a Claim**

Hickam Communities also argues all of Butler's claims
should be dismissed pursuant to Federal Rule of Civil
Procedure 12(b)(6), but Hickam Communities does not seek the
dismissal of Count I (negligence) and Count VIII (breach of
contract). See Motion at 2; id., Mem. in Supp. at 20.
Plaintiffs' position is that all of Butler's claims are
sufficiently pled, but they acknowledge that this Court is
likely to rule in a manner consistent with its orders in Camp.
Plaintiffs have also represented that they will amend all of
Butler's claims that are dismissed without prejudice.

This Court turns first to Butler's claims that raise
the same issues as claims addressed in Camp.

### A.  **Claims Addressed in *Camp***

#### 1.  **Count II – Strict Liability**

In Camp, this Court stated:

> Applying the reasoning of Armstrong [v.
> Cione, 69 Haw. 176, 738 P.2d 79 (1987),] and
> Leong [v. Sears Roebuck & Co., 89 Hawai`i 204,
> 970 P.2d 972 (1998),] to the instant case, the
> Court predicts the Hawai`i Supreme Court would
> not hold the landlord in a residential lease
> strictly liable for the provision of contaminated
> water in a residential lease. Defendants can
> neither adjust the costs up the chain of
> distribution nor take greater care in providing
> water to Plaintiffs. Here, as the supreme court

11

noted in Armstrong, "[t]he same economic
incentives for creating safer products through an
enduring commercial relationship between the
manufacturer and its distributors are not present
in the case of the residential landlord."
Armstrong, 69 Haw. at 185, 738 P.2d at 84
(citations omitted).

[Camp, Order Granting in Part and Denying in Part Defendants'

Motion to Dismiss Complaint Filed November 17, 2024, filed

7/30/24 (dkt. no. 26) ("Camp 7/30/24 Order"), at 13 (some

alterations in Camp).[3]] The strict liability claim in Camp was

dismissed with prejudice. Camp 7/30/24 Order, 2024 WL 3594742,

at *5. Because Butler has not presented any reason that warrants

departing from the ruling in the Camp 7/30/24 Order, this Court

dismisses Butler's strict liability claim with prejudice for the

same reasons set forth in Camp. Hickam Communities' Moton is

therefore granted as to Butler's claim in Count II.

### 2.   Count III – Medical Monitoring

In the Camp 7/30/24 Order, this Court stated:

> The Court predicts that the Hawai`i Supreme
> Court would not adopt an independent tort for
> medical monitoring. Cf. In re Zantac (Ranitidine)
> Prods. Liab. Litig., 546 F. Supp. 3d 1152, 1167-
> 68 (S.D. Fla. 2021) (declining to recognize a
> medical monitoring claim in Montana when only one
> state trial court case that was twenty years old
> and unpublished recognized such a claim in
> Montana, and dismissing such claims with
> prejudice).

---

[3] The Camp 7/30/24 Order is also available at 2024 WL
3594742.

However, the Court notes, without deciding, that Plaintiffs may still be able to recover medical monitoring damages as a remedy, if Plaintiffs can establish that they are entitled to such a remedy in connection with one of the remaining claims. See In re Haw. Fed. Asbestos Cases, 734 F. Supp. 1563, 1573 (D. Hawai`i 1990) (stating the defendants' motion for new trial as to special damages would be denied if the plaintiffs filed a remittitur regarding the cost of the future medical monitoring, discounted to present value); cf. Ross v. Stouffer Hotel Co. (Hawai`i) Ltd., 76 Hawai`i 454, 466, 879 P.2d 1037, 1049 (1994) ("[A] claim for punitive damages is not an independent tort, but is purely incidental to a separate cause of action." (citation omitted)). Because medical monitoring damages as a remedy would flow from a separate cause of action, the Court declines to address whether Plaintiffs possess standing to pursue such damages until a later stage of this case when the causes of actions are more fully developed.

Id. at *6 (alteration in Camp). The medical monitoring count was dismissed with prejudice, but this Court ruled that the plaintiffs were not foreclosed from seeking medical monitoring damages as a potential remedy. Id. Because Butler has not presented any reason that warrants departing from the ruling in the Camp 7/30/24 Order, this Court dismisses Butler's medical monitoring claim with prejudice for the same reasons set forth in Camp. Hickam Communities' Moton is therefore granted as to Butler's claim in Count III. However, as in Camp, Butler is not foreclosed from seeking medical monitoring damages as a potential remedy in his remaining claims.

3.    **Count V**

a.    **UDAP**

In the Camp 7/30/24 Order, this Court predicted that
"the Hawai`i Supreme Court would hold that the provision of
water in a rental unit is not a 'good' under Section 480-1,
because the contracts at issue are fundamentally agreements to
lease a residence, not to sell a 'good.'" Id. at *8. This Court
also stated:

> While cognizant that Hawai`i consumer law is
> interpreted broadly to maximize consumer
> protection, see State ex rel. Shikada v. Bristol-
> Myers Squibb Co., 152 Hawai`i 418, 446, 526 P.3d
> 395, 423 (2023), the Court agrees with Lake [v.
> Ohana Military Communities, LLC, CIVIL 16-00555
> LEK-KJM, 2017 WL 4563079, at *6-7 (D. Hawai`i
> Aug. 1, 2017)], Barber [v. Ohana Military
> Communities, LLC, Civil No. 14-00217 HG-KSC, 2015
> WL 2250041, at *7-8 (D. Hawai`i May 12, 2015)],
> Freeman [v. United Dominion Realty Trust, Inc.,
> No. E042905, 2008 WL 1838373 (Cal. Ct. App.
> April 25, 2008), as modified (May 6, 2008)], and
> Heckart [v. A-1 Self Storage, Inc., 196 Cal.
> Rptr. 3d 504, 512 (Cal. Ct. App. 2015)].[4] The
> provision of water cannot be properly viewed in
> isolation from the underlying lease. The
> fundamental nature of a rental agreement is to
> lease a residence, not to purchase the service of
> water delivery to a tenant's residence. Even
> accepting all of Plaintiffs' factual allegations

---

[4] This Court granted reconsideration of the August 1, 2017
order on grounds unrelated to the analysis cited here. See Lake
v. Ohana Mil. Cmtys., LLC, CIVIL 16-00555 LEK-KJM, 2017 WL
4560123, at *3 (D. Hawai`i Oct. 12, 2017). The Ninth Circuit
vacated the judgment in Lake on grounds that were unrelated to
the analysis in the August 1, 2017 order. See Lake v. Ohana Mil.
Cmtys, LLC, 14 F.4th 993 (9th Cir. 2021). Heckart was superseded
and affirmed by the California Supreme Court. Heckart v. A-1
Self Storage, Inc., 4 Cal. 5th 749 (2018).

as true, see Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009), the Court predicts the Hawai`i Supreme
Court would find that Plaintiffs have not
purchased, attempted to purchase, and were not
solicited to purchase "services" within the
meaning of Chapter 480.

Id. at *9. Finally, this Court ruled that the plaintiffs could
not establish standing to pursue a UDAP claim based on their
purchase of replacement household goods. The UDAP claim in Camp
was therefore dismissed with prejudice. Id. Because Butler has
not presented any reason that warrants departing from the ruling
in the Camp 7/30/24 Order, this Court dismisses Butler's UDAP
claim with prejudice for the same reasons set forth in Camp.
Hickam Communities' Moton is granted as to Butler's UDAP claim
in Count V.

### b.   UMOC

"'[A]ny person may bring a claim of unfair methods of
competition based upon conduct that could also support a claim
of unfair or deceptive acts or practices as long as the nature
of the competition is sufficiently alleged in the complaint.'"
Id. (quoting Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc., 113
Hawai`i 77, 113, 148 P.3d 1179, 1215 (2006)). This Court
therefore rejects Butler's argument that a plaintiff asserting a
UMOC claim is not required to plead the nature of the
competition in the complaint. See Mem. in Opp. at 22-23.

In the Camp 7/30/24 Order, this Court also stated:

Plaintiffs' factual allegations are insufficient to support a claim that Defendants' failure to disclose the risk that Plaintiffs' household tap water was contaminated had a negative effect on competition that harms consumers like Plaintiffs. Plaintiffs allege: "Defendant Ohana is in competition with other providers of leased residential housing in Honolulu and gained an unfair competitive advantage over them by failing to disclose water contamination or provide uncontaminated water while charging comparable rents." [[Camp,] Complaint at ¶ 79.] This allegation, standing alone, is insufficient.

While a plaintiff may allege a defendant's conduct negatively affects competition by alleging a defendant's conduct creates incentives for consumers to purchase defendant's services, rather than a competitor's, here, Plaintiffs do not make such allegations. See Gurrobat [v. HTH Corp.], 133 Hawai`i [1,] 22, 323 P.3d [792,] 813 [(2014)] (stating "plaintiffs may prove how a defendant's conduct negatively affects competition by showing that defendant's conduct enables the defendant to create incentives for customers to purchase banquet services from the defendant instead of competitors"). Instead, Plaintiffs allege that Defendants' conduct allows Defendants to charge market-rate rents, with the implication that Defendants' rental rates would have been lower if Defendants had disclosed the water contamination.

Missing from the allegations is the anticompetitive effects within that market – how competitors were harmed by Defendants' alleged actions. "'[O]rdinarily, the factual support needed to show injury to competition must include proof of the relevant geographic markets and demonstration of the restraint's anticompetitive effects within those markets.'" Sunday's Child, LLC v. Irongate Azrep BW LLC, CIVIL NO. 13-00502 DKW-RLP, 2017 WL 10651861, at *4 (D. Hawai`i Oct. 27, 2017) (quoting Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n, 884 F.2d 504, 508 (9th Cir. 1989) (affirming dismissal for failure to

allege actual detrimental competitive effects)).
The Complaint does not contain allegations of how
Defendants' actions restrained competition by
"disrupting 'price setting, resource allocation,
market entry, or output designation' " or other
market functions. See WHIC LLC v. NextGen Lab'ys,
Inc., Civ. No. 18-00261 JMS-WRP, 2019 WL 2717769,
at *4 (D. Hawai`i June 28, 2019) (some citations
omitted) (quoting Les Shockley Racing, 884 F.2d
at 508) (citing Field, Tr. of Estate of Aloha
Sports Inc. v. Nat'l Collegiate Athletic Ass'n,
143 Haw. 362, 375, 431 P.3d 735, 748 (2018)
(listing how the defendant's actions negatively
affected competition by "(1) restricting the
transfer of ownership of bowl games contingent
upon recertification; (2) leading to lower prices
for the sale of bowl sponsoring agencies because
of uncertainty as to whether a bowl will gain
recertification; and (3) acting as a restriction
on output that would result in a loss of
financial benefits to schools and consumers who
would have otherwise participated in a given
bowl")). Absent from the Complaint are
allegations outlining the effect of Defendants'
actions on the price or availability of leased
housing in the relevant geographic market, or any
other characteristic of a competitive market.

Id. at *10 (some alterations in Camp). The UMOC claim in Camp

was dismissed without prejudice because of the possibility that

the plaintiffs could add sufficient factual allegations to state

a plausible UMOC claim. Id. at *11.

Paragraph 77 in the Complaint in the instant case

contains the same allegation as paragraph 79 in the Camp

complaint. Because Butler's UMOC claim has the same defect as

the UMOC claim in Camp, and because Butler has not presented any

reason that warrants departing from the ruling in the Camp

7/30/24 Order, this Court dismisses Butler's UMOC claim without

17

prejudice for the same reasons set forth in Camp. Hickam
Communities' Moton is granted in part and denied in part as to
Butler's UMOC claim in Count V.

**B.    Claims Not Addressed in *Camp***

**1.    Count IV – Nuisance**

Under Hawai`i law, a nuisance is defined as:

> an activity or condition that actively
> interferes with an individual's right to use
> and enjoy land. See Western Sunview
> Properties, LLC v. Federman, 338 F. Supp. 2d
> 1106, 1116 (D. Haw. 2004) (A nuisance "has
> been defined as 'a nontrespassory invasion
> of another's interest in the private use and
> enjoyment of his land.'") (quoting Layton v.
> Yankee Caithness Joint Venture, 774 F. Supp.
> 576, 577 (D. Nev. 1991)). The "central idea
> of nuisance is the unreasonable invasion" of
> a property interest. Lussier v. San Lorenzo
> Valley Water Dist., 206 Cal. App. 3d 92, 100
> (Cal. Ct. App. 1988). A typical example of a
> nuisance is smoke or fumes that invade an
> individual's property from another location.
> E.g., Olden C. LaFarge Corp., 203 F.R.D. 254
> (E.D. Mich. 2001). Other common examples
> include noxious odors and unreasonably loud
> noise. E.g., Crea v. Crea, 16 P.3d 922 (Id.
> 2000) (odor from hog farm could be a
> nuisance); Schild v. Rubin, 232 Cal. App. 3d
> 755 (Cal. Ct. App. 1991) (excessive and
> inappropriate noise may constitute
> nuisance).

Mitchell v. United States, Civ. No. 11-00088 HG-
KSC, 2011 WL 4048986, at *7 (D. Hawai`i Sept. 12,
2011).

> One is subject to liability for a
> private nuisance if, but only if, his
> conduct is a legal cause of an invasion
> of another's interest in the private

18

> use and enjoyment of land, and the
> invasion is either
>
>> (a)   intentional and unreasonable,
>> or
>>
>> (b)   unintentional and otherwise
>> actionable under the rules
>> controlling liability for
>> negligent or reckless conduct, or
>> for abnormally dangerous
>> conditions or activities.
>
> Restatement (Second) of Torts § 822 (1979)
> Westlaw (database updated June 2019)
> (Restatement of Torts). An invasion is
> "unreasonable" if, inter alia, "the gravity
> of the harm outweighs the utility of the
> actor's conduct." Id. § 826.
>
> Lee Ching v. Loo Dung, 145 Hawai`i 99, 115, 446
> P.3d 1016, 1032 (Ct. App. 2019).[5] . . .

Powers v. Airbnb, Inc., CIV. NO. 23-00243 LEK-WRP, 2023 WL

7166246, at *3-4 (D. Hawai`i Oct. 31, 2023) (footnote omitted).

Butler's nuisance claim in Count IV appears to allege

both a nuisance claim under Restatement (Second) of Torts

Section 822(a) and Section 822(b). See Complaint at ¶ 72

(alleging Hickam Communities created a nuisance by "**knowingly**

**and recklessly** allowing petroleum contamination of the potable

water of [Butler], and by **willfully** failing and refusing to take

reasonable measures to resolve said water contamination and to

---

[5] The Intermediate Court of Appeals' decision in Lee Ching
was reversed by the Hawai`i Supreme Court on grounds other than
those cited here. See Lee Ching v. Loo Dung, 148 Hawai`i 416,
477 P.3d 856 (2020).

bring [his] unit[] into a habitable condition" (emphases added)); id. at ¶ 73 (alleging Hickam Communities' conduct "was **knowing, willful, wanton, reckless, and/or grossly negligent,** and demonstrates a conscious disregard for the rights of others" (emphasis added)). Butler also alleges that the presence of petroleum contamination in the water provided to his home is an unreasonable interference with his use and enjoyment of his home. See id. at ¶ 72. However, Count IV does not plead factual allegations that, if proven, would establish that Hickam Communities' conduct was the legal cause of the invasion of petroleum contamination into Butler's home. Butler's allegation that Hickam Communities "knowingly and recklessly allow[ed] petroleum contamination of [Butler's] potable water," [id.,] is a conclusory assertion that is not supported by any factual allegations regarding how Hickam Communities' conduct was the legal cause of the contamination that entered Butler's home. A conclusory allegation is not taken as true for purposes of the instant Motion. See Iqbal, 556 U.S. at 678 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." (citation and internal quotation marks omitted)).

Butler's claim in Count IV fails to state a plausible nuisance claim and must be dismissed. See id. ("To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (citation and internal quotation marks omitted)). The dismissal is without prejudice because it may be possible for Butler to cure the defects in his claim by amendment. See Hoang v. Bank of Am., N.A., 910 F.3d 1096, 1102 (9th Cir. 2018) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." (quotation marks and citation omitted)).

### 2.    **Count VII - Trespass**

> [U]nder Hawai`i law, "[a] trespass occurs when a person intentionally (a) enters land in the possession of the other, or causes a thing or third person to do so, or (b) remains on the land, or (c) fails to remove from the land a thing which he is under a duty to remove." Shayefar v. Kaleleiki, Civ. No. 14-00322 HG-KSC, 2014 WL 5023498, at *5 (D. Hawai`i Oct. 7, 2014) (citation and internal quotation marks omitted).

Powers, 2023 WL 7166246 at *3 (some alterations in Powers).

The Complaint alleges "harmful petroleum hydrocarbons and fuel contaminants" entered Butler's property through the water provided by Hickam Communities. [Complaint at ¶ 95.] The Complaint, however, does not allege Hickam Communities engaged in **intentional** conduct that satisfies any of the three types of trespass claims. The Complaint alleges that, because Hickam Communities "controlled the contaminated water when it entered

21

[Butler's] property, [it is] liable for the trespass of [its]
contaminated water . . . onto the property of [Butler] . . . ."
[Id. at ¶ 96.] However, this is a conclusory assertion that is
not supported by any factual allegations regarding how Hickam
Communities controlled the contaminated water. The conclusory
allegation therefore is not taken as true for purposes of the
instant Motion. At the hearing on the Motion, Plaintiffs'
counsel argued that, even if Hickam Communities did not
intentionally cause the fuel contaminants to enter Butler's
home, once Hickam Communities was aware of the fuel
contamination, it had a duty to remove the contaminants, and it
intentionally failed to do so within a reasonable period. Such a
theory could support a plausible trespass claim, but the factual
allegations currently pled in Count VII do not support it, and
therefore Butler cannot rely on that theory to avoid the
dismissal of his trespass claim.

        Butler's claim in Count VII must be dismissed because,
as currently pled, it fails to state a plausible trespass claim.
The dismissal is without prejudice because Butler may be able to
cure the defects in his claim by amendment.

### 3.    Count IX – Landlord-Tenant Code Claim

        Count IX cites Hawai`i Revised Statutes Sections 521-
10, 521-42(a)(1), and 521-63. [Complaint at ¶¶ 107-08, 110-11.]
In addition, paragraph 112 cites Chapter 521 as a whole.

Section 521-10 states: "Every duty imposed by this chapter and every act which must be performed as a condition precedent to the exercise of a right or remedy under this chapter imposes an obligation of good faith in its performance or enforcement." Section 521-42 governs a residential landlord's duty to provide fit premises. Section 521-42 states, in pertinent part:

> The landlord shall at all times during the tenancy:
>
> (1)  Comply with all applicable building and housing laws materially affecting health and safety;
>
> (2)  Keep common areas of a multi-dwelling unit premises in a clean and safe condition;
>
> (3)  Make all repairs and arrangements necessary to put and keep the premises in a habitable condition;
>
> (4)  Maintain all electrical, plumbing, and other facilities and appliances supplied by the landlord in good working order and condition, subject to reasonable wear and tear;
>
> (5)  Except in the case of a single family residence, provide and maintain appropriate receptacles and conveniences for the removal of normal amounts of rubbish and garbage, and arrange for the frequent removal of such waste materials; and
>
> (6)  Except in the case of a single family residence, or where the building is not required by law to be equipped for the purpose, provide for the supplying of running water as reasonably required by the tenant.

Section 521-63 addresses remedies, and it states, in pertinent part:

> (a)  If any condition within the premises
> deprives the tenant of a substantial part of the
> benefit and enjoyment of the tenant's bargain
> under the rental agreement, the tenant may notify
> the landlord in writing of the situation and, if
> the landlord does not remedy the situation within
> one week, terminate the rental agreement. The
> notice need not be given when the condition
> renders the dwelling unit uninhabitable or poses
> an imminent threat to the health or safety of any
> occupant. . . .
>
> (b)  If the condition referred to in subsection
> (a) was caused wilfully or negligently by the
> landlord, the tenant may recover any damages
> sustained as a result of the condition.
>
> (c)  If the landlord removes or excludes the
> tenant from the premises overnight without cause
> or without court order so authorizing, the tenant
> may recover possession or terminate the rental
> agreement and, in either case, recover an amount
> equal to two months rent or free occupancy for
> two months, and the cost of suit, including
> reasonable attorney's fees. If the rental
> agreement is terminated, the landlord shall
> comply with section 521-44(c). . . .

In Lake v. Ohana Military Communities, LLC, the

plaintiffs asserted a Chapter 521 claim that was similar to

Butler's claim here, and this Court ruled:

> Plaintiffs have alleged the contaminated soil at
> [Kaneohe Marine Corp Base Hawaii ("MCBH")]
> deprived them of the use and enjoyment of their
> rental homes and of the MCBH community in general
> and Defendants have failed to adequately respond
> to the contamination issues. Plaintiffs also
> allege Defendants' actions were willful and/or
> negligent. This Court concludes the alleged
> violation of § 521-10 is actionable pursuant to
> § 521-63, and therefore denies the Motion as to
> the portion of Amended Count III based on § 521-
> 10.

24

> However, Plaintiffs have not identified any
> specific "building or housing laws materially
> affecting health and safety" that Defendants
> allegedly violated. Amended Count III therefore
> fails to a state a plausible claim for violation
> of § 521-42(a)(1) and must be dismissed.

CIVIL 16-00555 LEK-KJM, 2018 WL 2449188, at *6-7 (D. Hawai`i

May 31, 2018).[6]

Similarly here, Butler does not identify any specific

"building and housing laws materially affecting health and

safety" that Hickam Communities allegedly violated. Therefore,

the portion of Butler's claim in Count IX based on Section 521-

42(a)(1) fails to state a plausible claim for relief. During the

hearing on the Motion, Butler's counsel argued the Complaint

contains sufficient factual allegations to state a plausible

claim under other subsections of Section 521-42, including

(a)(3) and (a)(4). However, only subsection (a)(1) is alleged in

Count IX. Count IX therefore fails to state a plausible claim

for relief under any portion of Section 521-42, and that portion

of Butler's claim in Count IX must be dismissed.

As recognized in Lake, a violation of Section 521-10

is actionable pursuant to Section 521-63. However, because

Butler's Section 521-10 claim appears to be based upon Hickam

Communities' failure to provide housing that complies with

---

[6] Lake was vacated on grounds unrelated to the May 31, 2018
order. See 14 F.4th 993.

health and safety laws, see Complaint at ¶¶ 107-09, that portion
of Butler's Section 521-10 claim fails for the same reason that
Butler's Section 521-42(a)(1) claim fails. That portion of
Count IX must be dismissed.

Count IX also alleges Hickam Communities violated
Section 521-63 because it would not allow Butler to terminate
his residential lease without notice after the water
contamination rendered the premises uninhabitable. See Complaint
at ¶¶ 110-11. Although Section 521-63(a) states that a tenant
may terminate a rental agreement without notice when a condition
renders the premises uninhabitable, the Complaint alleges:

> Defendants represented to Plaintiffs and the
> Subclass that in order for them to be able to
> vacate the premises as a result of the water
> contamination, Plaintiffs were bound under the
> terms of the lease to pay two months' rent for
> early termination of their leases. Defendants
> further represented to Plaintiffs and the
> Subclass that in order to escape the two-month
> rent penalty for early termination of the lease,
> they must execute an agreement waiving and
> releasing any claims by Plaintiffs and the
> Subclass against Defendants, which would include
> all claims related to the water
> contamination. . . .

[Id. at ¶ 111.] These allegations, which are assumed to be true
for purposes of the instant Motion, see Iqbal, 556 U.S. at 678,
are sufficient to support a plausible claim under Section 521-
63(a). Hickam Communities' Motion is therefore denied as to the
portion of Butler's claim in Count IX based upon the alleged

refusal to allow Butler to terminate his rental agreement
without notice.

As to the portions of Butler's claim in Count IX that
have been dismissed, the dismissal is without prejudice because
it may be possible for Butler to cure the defects in his claim
by amendment. The Motion is therefore denied as to Hickam
Communities' request for dismissal with prejudice.

### 4.    Count VI – Breach of the Implied Warranty of Habitability

Relevant to Butler's common law claim for breach of
the implied warranty of habitability, Hawai`i Revised Statutes
Section 521-3(a) states:

> Unless displaced by the particular provisions of
> this chapter, the principles of law and equity,
> including the law relative to capacity to
> contract, principal and agent, real property,
> public health, safety and fire prevention,
> estoppel, fraud, misrepresentation, duress,
> coercion, mistake, bankruptcy, or other
> validating or invalidating cause supplement its
> provisions.

"Chapter 521 . . . applies to residential landlord-tenant
relationships, and it . . . displaces the common law regarding
residential leases." Wond Fam. Kapalama, LLC v. Cont'l Tire the
Americas, LLC, CIVIL NO. 16-00676 LEK-KJM, 2018 WL 2027728, at
*14 (D. Hawai`i May 1, 2018). Although not entirely clear,
Hickam Communities appears only to argue displacement as to

27

Butler's breach of the implied warranty of habitability claim. See Motion, Mem. in Supp. at 18.

One of the allegations supporting Count VI is that Hickam Communities "[f]ailed to provide adequate, safe, potable water for use by [Butler] after the November 2021 Red Hill Facility spill." [Complaint at ¶ 92.d.] Hawai`i Revised Statutes Section 521-42(a)(6) states that, "[e]xcept in the case of a single family residence," a landlord is required to "provide for the supplying of running water as reasonably required by the tenant." Thus, as to single family residences, Section 521-42(a)(6) does not impose a duty upon a landlord to provide running water. To the extent that potable running water is necessary to the provide a habitable single-family residence, Chapter 521 does not displace the implied warranty of habitability. However, the Complaint does not allege that the residence Butler rented from Hickam Communities was a single-family residence. See Complaint at ¶ 8 (alleging only that Butler "resided in, and paid rent for, a **housing unit** in the City & County of Honolulu, Hawai`i, that was owned, operated, managed and/or leased by Defendant Hickam [Communities]" (emphasis added)). Plaintiffs have indicated that they will file an amended complaint as to the claims dismissed without prejudice in this Order. The amendments to those claims should include, *inter alia*, further allegations clarifying Butler's

28

Chapter 521 claim, and those amendments are likely to affect the
displacement analysis. This Court therefore declines to address
displacement at this time. Hickam Communities may raise the
displacement issue in a future motion when the record is more
fully developed.

Assuming that the common law breach of the implied
warranty of habitability claim is not displaced, the claim's
requirements are as follows:

> A property owner breaches the implied warranty of
> habitability if he leases his property with a
> defect or unsafe condition that is "of a nature
> and kind which will render the premises unsafe,
> or unsanitary and thus unfit for living."
> Armstrong v. Cione, 736 P.2d 440, 445 (Haw. Ct.
> App. 1987); Lemle v. Breeden, 462 P.2d 470, 474
> (Haw. 1969) (recognizing the doctrine of implied
> warranty of habitability and finding rat
> infestation of leased premises constituted a
> breach). The leased premises must be
> substantially unsuitable for living so that the
> breach of the warranty would constitute a
> constructive eviction of the tenant. Armstrong,
> 736 P.2d at 445.

Lake, 2018 WL 2449188, at *6 (quoting Barber v. Ohana Military
Communities, LLC, Civil No. 14-00217 HG-KSC, 2014 WL 3529766, at
*6 (D. Hawai`i July 15, 2014)).

The Complaint alleges Butler was constructively
evicted from his home because of the water contamination. See
Complaint at ¶¶ 4, 47, 87. Count VI alleges Hickam Communities
breached its duty to provide Butler with "safe, sanitary, and
health residential housing" because Hickam Communities:

29

    a.    Failed to identify, test or otherwise screen
        water sourced from the City & County Board
        of Water Supply, the Navy and/or the
        Southern O`ahu Basal Aquifer before it was
        sold or distributed to [Butler];

    b.    Failed to warn [Butler] of the November 2021
        Red Hill Facility spill and contamination of
        Defendants' water in a timely manner;

    c.    Failed to provide alternative housing for
        [Butler] after the November 2021 Red Hill
        Facility spill;

    d.    Failed to provide adequate, safe, potable
        water for use by [Butler] after the November
        2021 Red Hill Facility spill; and

    e.    Otherwise failed to provide housing that was
        safe and habitable.

[Id. at ¶¶ 92-92.e.] The Complaint also alleges:

    34.  [Hickam Communities] and the Navy
entered into a public-private venture to make
productive use of residential housing previously
utilized as a military housing community. Under
the public-private venture, federal lands are
leased to [Hickam Communities] who then lease
residences to private consumers, including
[Butler]. The public-private venture also
includes the sourcing of potable water sources
from a Navy-operated water system to [Hickam
Communities'] control. As a party to the public-
private venture, Defendant Hickam [Communities]
had and has a unique ability to obtain
information on the quality and safety of the
water in the [Navy-operated Water System] and to
obtain information on risks of contamination to
potable water supply attributable to leakages and
spills occurring at the Red Hill Facility.

              . . . .

    38.  [Hickam Communities] possessed
knowledge of the risk of water contamination from
the Red Hill Facility by and through their

> relationships with the Navy and their sale of
> water that they acquired from the [Navy-operated
> Water System]. On information and belief, they
> knew or should have known of the many prior fuel
> leaks from the Red Hill Facility. At no time did
> they warn [Butler] of the risk of fuel leaks in
> their water. Even after the November 2021 Red
> Hill Facility spill, [Hickam Communities was]
> unreasonably slow to warn consumers of the spill,
> allowing [Butler] to continue drinking and using
> the poisoned water.

[Id. at pgs. 12-13.]

Count VI appears to allege that Butler's residence was uninhabitable both before and after the November 2021 fuel spill at Red Hill. The factual allegations of the Complaint are sufficient to state a plausible claim for the breach of the implied warranty of habitability based on Hickam Communities' actions and omissions after the November 2021 fuel spill. Hickam Communities' Motion is therefore denied as to that portion of Butler's claim in Count VI.

However, the Complaint does not include sufficient factual allegations regarding the issue of whether Butler's residence was uninhabitable prior to the November 2021 fuel spill. That portion of Butler's claim in Count VI fails to state a plausible claim for breach of the implied warranty of habitability and must be dismissed. The dismissal is without prejudice because it may be possible for Butler to cure the defects in that portion of Count VI by amendment.

31

III. **Ruling on the Motion & the Filing of the Amended Complaint**

       In sum, this Court rules as follows:

-Hickam Communities' Motion is denied without prejudice as to
    its request for dismissal pursuant to Federal Rule of Civil
    Procedure 12(b)(7) for failure to join the Navy.

-The Motion is granted insofar as Butler's claims in Counts II
    and III and Butler's UDAP claim in Count V are dismissed
    with prejudice.

-The Motion is granted insofar as Butler's UMOC claim in Count V
    and Butler's claims in Counts IV and VII are dismissed, but
    the Motion is denied insofar as the dismissal of those
    claims is without prejudice.

-The Motion is denied as to the portion of Butler's claim in
    Count VI based on Hickam Communities' actions and omissions
    after the November 2021 fuel spill at Red Hill. The Motion
    is granted insofar as the portion of Butler's claim in
    Count VI based on Hickam Communities' actions and omissions
    prior to the November 2021 fuel spill is dismissed, but the
    Motion is denied insofar as the dismissal of that portion
    of Butler's claim in Count VI is without prejudice.

-The Motion is denied as to the portion of Butler's claim in
    Count IX alleging that Hickam Communities violated Hawai`i
    Revised Statutes Section 521-63(a) by preventing Butler
    from terminating his rental agreement without notice. The
    Motion is granted insofar as all other portions of Butler's
    claim in Count IX are dismissed, but the Motion is denied
    insofar as that dismissal of those portions of Butler's
    claim in Count IX is without prejudice.

Hickam Communities has not sought a Federal Rule of Civil

Procedure 12(b)(6) dismissal of Counts I and VIII. See Motion,

Mem. in Supp. at 20 ("at a minimum, Counts 2, 3, 4, 5, 6, 7, and

9 of Plaintiff's Complaint should be dismissed with prejudice").

This Court makes no findings or conclusions regarding Butler's

claims in those counts.

Butler shall file an amended complaint by **May 14, 2025.** As previously noted, the Bentleys and Minor have been ordered to arbitrate their individual claims, and the Bentleys' and Minor's individual claims and the class claims have been stayed pending the outcome of the arbitration. The amended complaint shall include the stayed claims, and Plaintiffs may amend the stayed claims consistent with this Order.

Plaintiffs' amended complaint shall not include any new parties or claims. Further, the amended complaint shall not include any new theories of liability, except as necessary to address the defects that have been identified in this Order. If Plaintiffs wish to make amendments to their claims that are not expressly permitted in this Order, Plaintiffs must file a motion for leave to file a second amended complaint. If Plaintiffs file such a motion, it will be considered by the magistrate judge in the normal course. If Plaintiffs file a motion for leave to file a second amended complaint, that motion will not affect the **May 14, 2025** deadline for the filing of the amended complaint.

Plaintiffs are CAUTIONED that, if the amended complaint does not comply with this Order, sanctions may be imposed, including, but not limited to, the striking of the amended complaint.

## <u>CONCLUSION</u>

For the foregoing reasons, Hickam Communities'
October 29, 2024 Motion to Dismiss Plaintiff Christian
Butler's Complaint, Filed November 17, 2023, is HEREBY
GRANTED IN PART AND DENIED IN PART, as stated in Discussion
Section III. Plaintiffs' amended complaint shall be filed
by **May 14, 2025.**

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 30, 2025.



/s/ Leslie E. Kobayashi

Leslie E. Kobayashi
Senior U.S. District Judge

<u>KASEY N. BENTLEY, ET AL. VS. HICKAM COMMUNITIES LLC, ET AL</u>; CV
24-00007 LEK-KJM; ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS PLAINTIFF CHRISTIAN BUTLER'S
COMPLAINT, FILED NOVEMBER 17, 2023